**GOLDBERG SEGALLA LLP**
902 Carnegie Center, Suite 100
Princeton, New Jersey 08540-6530
(609) 986-1300
(609) 986-1301 (Fax)
Attorneys for Plaintiff
    Simonson Technology Services, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIMONSON TECHNOLOGY SERVICES, INC. | Civil Action No.: |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| ORACLE AMERICA, INC. (formerly known as SUN MICROSYSTEMS, INC.); | |
| Defendant. | |

Plaintiff, Simonson Technology Services, Inc., by way of Complaint against Defendant says:

**PARTIES**

1.    Plaintiff, Simonson Technology Services, Inc. (hereinafter referred to as "Plaintiff" or "STS"), is a corporation organized and existing under the laws of the State of Nevada, with a principal place of business located in Illinois.

2.    At all times mentioned herein, Sun Microsystems, Inc. was a corporation and/or company organized and existing under the laws of the State of Delaware, with a principal place of business in the State of California. Sun Microsystems, Inc. was acquired by Oracle Corporation in January 2010, and is now known as Oracle America, Inc., a subsidiary of Oracle Corporation. Defendant Oracle America, Inc. is a corporation

32187.1

organized under the laws of the State of Delaware with a principal place of business located at 500 Oracle Parkway, Redwood City, California 94065. Defendant, Oracle America, Inc. (formerly known as Sun Microsystems, Inc.) is hereinafter referred to as "Defendant" or "Sun."

## JURISDICTION AND VENUE

3. This action involves claims including copyright infringement under the United States Copyright Act, 17 U.S.C. §101, *et seq.*

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1338 and 1367.

5. STS has complied with all formalities required under the Copyright Act, including, but not limited to having obtained registrations and/or made application to and by sending appropriate applications and deposit materials to the United States Copyright Office, for among others, the Works identified in **Exhibit A** (attached hereto).

6. Jurisdiction and venue are proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1391 because Defendant transacts and does business in this District, and because a substantial part of the relevant events occurred in this District, specifically in Mercer County, New Jersey.

## FACTUAL ALLEGATIONS

### Background Concerning the Relationship of STS and Sun

7. STS is a high-end training and consulting company whose business includes the creation of instructional materials and training programs with respect to IT equipment.

8. STS worked as a business partner of Sun for 17 years, through August 2009, writing courses and delivering training internally at Sun and externally to students world-wide.

9. In or about 2002, Paul Horan, an employee of Sun working in Mercer County, New Jersey, headed up a program for Sun known as "Just For Me", involving retaining businesses (such as STS) to prepare instructional materials and conduct training programs on Sun's behalf concerning Sun products. On numerous occasions representatives of STS met with Paul Horan in Mercer County, New Jersey in this regard.

10. The concept of the Just For Me program was to have independent contractors develop and own course material, which the contractors could then use to provide training on Sun's behalf.

11. The Just For Me materials and training would address topics that Sun's own course material did not cover (or did not sufficiently cover), and combinations of topics which Sun did not have existing resources to address such as topics involving non-Sun products.

12. Although independent contractors owned the course material developed with regard to the Just For Me program, STS was also retained on a work for hire basis by Sun for other, non-Just For Me matters.

13. Over the course of approximately seven years, STS delivered over 200 classes in connection with the Just For Me program.

### The CT900 Course Materials

14. In late 2005, Sun considered creating its own course materials and training for a new server that Sun was developing, the CT900.

15. Ultimately however, Paul Horan of Sun contacted STS with regard to development of course materials and training for the CT900 under the Just For Me program.

16. STS and Sun agreed that STS would create the CT900 course materials at its own expense.

17. All course materials developed for the CT900 ("Sun Netra CT900 Server Administration and Maintenance") were marked the Copyright © of STS.

18. Since 2006, the Sun Netra CT900 Server Administration and Maintenance has gone through at least 10 revisions.

19. STS invested in excess of $160,000 in the development of the Sun Netra CT900 Server Administration and Maintenance material.

20. Dave Simonson, the President of STS, became an authority on the CT900 server and a large number of questions fielded by Sun with respect functionality and support CT900 were directed to him by Sun.

21. In or about October 2008 the parties also entered into a Statement of Work agreement ("10/08 Agreement") by which, for consideration, STS provided pre-existing course materials as well as services to Sun for the development of web-based modules concerning the Sun CT900 blade server. (A copy of the 10/08 Agreement is attached hereto as **Exhibit B**.)

22. The 10/08 Agreement was drafted by Sun.

23. Pursuant to the 10/08 Agreement, the content and web-based modules produced would become the property of Sun for the limited purpose of using the modules for Sun's internal services and for Sun's Service Partner audiences.

24. Pursuant to the 10/08 Agreement, Sun was prohibited from making the content and web-based modules produced available to Sun customers.

25. In or about the summer of 2009, Sun requested that STS provide copies of detailed outlines (identified as "STS Proprietary") for every training course STS had delivered within the preceding twelve months.

26. When STS refused to provide copies of the outlines, Sun advised that it was already in possession of the CT900 outline and one other.

27. In July 2009, STS and Sun could not agree to rates for training presentations moving forward and, accordingly, Sun terminated STS's status as a Sun authorized training provider.

28. In August 2009, STS sent notice to Sun, pursuant to Sun's Business Conduct Office procedure, raising issues of inappropriate conduct arising out of the termination of STS as an authorized training provider. STS also raised concerns regarding the non-authorized use of its intellectual property.

29. Sun subsequently delivered training courses to customers, and/or contracted for the delivery of CT900 training courses to customers, using and/or providing the STS Sun Netra CT900 Server Administration and Maintenance material and/or substantially similar materials. STS is specifically aware of two occasions of such wrongful conduct by Sun, in September and October 2009, involving the customer AT&T.

30. In regard to the production of substantially similar course materials, Sun employed a contractor and provided him with access to the STS Sun Netra CT900 Server Administration and Maintenance material. Sun then slightly reformatted the material

(such as changing the Font size), reworded a few sentences, and replaced the STS Copyright © notice with its own. (By way of example, a copy of pages from the STS Copyright Works, the "Sun Netra CT900 Server Administration and Maintenance" are attached hereto as **Exhibit C**, and a copy of the topically related pages from the materials purported to be the copyright of Sun Microsystems, Inc. are attached hereto as **Exhibit D**.)

31. Despite complaints from STS regarding the unlawful use of its works and the breach of the 10/08 Agreement, Sun has failed and/or refused to cease the unauthorized use.

## FIRST COUNT

## COPYRIGHT INFRINGEMENT

32. Plaintiff repeats and incorporates each and every previous allegation in this Complaint as if set forth at length herein.

33. The Works consist of the CT900 course materials titled Sun Netra CT900 Server Administration and Maintenance which are original and independently created works that have been reduced to a tangible medium by Plaintiff.

34. Plaintiff owns the Works, which are the proper subject matter of copyright protection.

35. Plaintiff has been duly issued Certificate of Registration (Exhibit A) for the Works, and has marked the Works with a copyright notice.

36. Defendant has reproduced, prepared derivative works from, and/or distributed unauthorized copies of the Works, and/or otherwise infringed the copyrights of Plaintiff, in violation of the exclusive rights set forth in the Copyright Act.

37. Defendant created the infringing copies directly from Plaintiff's copyrighted Works.

38. Defendant has engaged and continues to engage in infringing activities, with knowledge of the Plaintiff's rights in said Works, and despite request made by Plaintiff to stop such infringing activity.

39. Plaintiff has incurred monetary damages as a result of Defendant's actions.

40. Plaintiff has been irreparably harmed, and has no adequate remedy at law.

41. Plaintiff is therefore entitled to the relief available under the Copyright Act, including but not limited to actual and/or statutory damages up to $30,000 per violation, the costs of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just, proper and equitable.

## SECOND COUNT

## WILLFUL COPYRIGHT INFRINGEMENT

42. Plaintiff repeats and incorporates each and every previous allegation in this Complaint as if set forth at length herein.

43. Defendant's infringements were reckless, knowing, and/or willful, and/or represent a calculated attempt to profit from their unlawful acts.

44. Plaintiff is therefore entitled to the relief available under the Copyright Act for willful copyright infringement, including but not limited to actual and/or statutory damages up to $150,000 per violation, the costs of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just, proper and equitable.

## THIRD COUNT

## BREACH OF CONTRACT

45. Plaintiff repeats and incorporates each and every previous allegation in this Complaint as if set forth at length herein.

46. Defendant breached the 10/08 Agreement by making the content and web-based modules produced in connection with the Agreement available to Sun customers.

47. As a proximate result of the above-mentioned breach of contract, Plaintiff has suffered monetary damages in an amount not capable of determination at this time.

48. Unless Defendant is enjoined and restrained from its unlawful conduct, Plaintiff will continue to be irreparably injured and damaged.

## FOURTH COUNT

## UNJUST ENRICHMENT

49. Plaintiff repeats and incorporates each and every previous allegation in this Complaint as if set forth at length herein.

50. Defendant has been unjustly enriched by its wrongful conduct at the expense of Plaintiff.

51. Plaintiff is entitled to full restitution of all amounts in which Defendant has been unjustly enriched at Plaintiff's expense.

52. Unless Defendant is enjoined and restrained from its unlawful conduct, Plaintiff will continue to be irreparably injured and damaged.

## FIFTH COUNT

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

53. Plaintiff repeats and incorporates each and every previous allegation in this Complaint as if set forth at length herein

54. STS has and had an expectancy in continuing and advantageous economic relationships with current and prospective purchasers of its materials and training for the CT900.

55. These relationships contained the probability of future economic benefit and, had had Defendant refrained from engaging in the unlawful conduct described in this Complaint, there is a substantial probability that STS would have been retained to provide materials and training services for these customers.

56. Defendant was aware of these economic relationships and intended to interfere with and disrupt them by wrongfully breaching the 10/08 Agreement governing use of STS's CT900 course materials and luring potential STS customers by making promotional statements regarding Defendant's ability to provide support services that were only possible because of Defendant's improper use of STS's intellectual property.

57. As a result of Defendant's acts, the above described relationships have been actually disrupted, causing certain current and prospective customers not to employ the services of STS.

58. As a direct and proximate cause of the Defendant's actions, STS has suffered economic harm, including, but not limited to, loss of profits from sales to current and

potential customers with regard to STS's CT900 materials and training. Defendant's wrongful conduct was a substantial factor in causing this harm.

59. Unless Defendant is restrained by appropriate injunctive relief, their actions are likely to recur and will cause STS irreparable injury for which there is no adequate remedy at law.

60. Defendant's intentional interference with STS's prospective economic advantage with its current and future customers, as described above, was willful, malicious, oppressive, and in conscious disregard of STS's rights, and STS is therefore entitled to punitive damages to punish their wrongful conduct and deter future wrongful conduct.

## SIXTH COUNT

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

61. Plaintiff repeats and incorporates each and every previous allegation in this Complaint as if set forth at length herein.

62. STS has and had an expectancy in continuing and advantageous economic relationships with current and prospective purchasers of its materials and training for the CT900.

63. These relationships contained the probability of future economic benefit and, had had Defendant refrained from engaging in the unlawful conduct described in this Complaint, there is a substantial probability that STS would have been retained to provide materials and training services for these customers.

10

64. Defendant knew or should have known of these economic relationships and knew or should have known that these relationships would be harmed if Defendant failed to act with reasonable care. Defendant failed to act with reasonable care. Instead, defendant breached the 10/08 Agreement governing use of STS's CT900 course materials and lured potential STS customers by making promotional statements regarding Defendant's ability to provide support services that were only possible because of Defendant's improper use of STS's intellectual property.

65. As a result of Defendant's acts, the above described relationships have been actually disrupted, causing certain current and prospective customers not to employ the services of STS.

66. As a direct and proximate cause of the Defendant's actions, STS has suffered economic harm, including, but not limited to, loss of profits from sales to current and potential customers with regard to STS's CT900 materials and training. Defendant's wrongful conduct was a substantial factor in causing this harm.

67. Unless Defendant is restrained by appropriate injunctive relief, their actions are likely to recur and will cause STS irreparable injury for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands Judgment against as follows:

A. Declaring that Defendant's unauthorized conduct violates Plaintiff's rights under common law and the Federal Copyright Act;

B. Immediately and permanently enjoining Defendant, its officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors,

assigns, and all others in active concert or participation with them from copying, republishing or otherwise using any of Plaintiff's copyrighted Works without consent;

C. Declaring that Defendant's conduct is in breach of the parties' 10/08 Agreement;

D. Immediately and permanently enjoining Defendant, its officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from distributing Plaintiff's copyrighted Works to anyone other than Defendant's employees or Service Partners, or using the CT900 course materials to train anyone other than Defendant's employees or Service Partners, and declaring that all infringing Works be returned and or destroyed;

E. Ordering Defendant to account to Plaintiff for all gains, profits and advantages derived by Defendant by its infringement of Plaintiff's copyrights or such damages as are proper, and since Defendant intentionally infringed Plaintiff's copyrights, for the maximum statutory damages for each violation;

F. Awarding Plaintiff actual and or statutory damages for Defendant's copyright infringement;

G. Awarding Plaintiff monetary damages caused by Defendant's breach of contract, unjust enrichment, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage;

H. Awarding Plaintiff punitive damages for Defendant's intentional interference with prospective economic advantage;

I. Awarding Plaintiff costs and reasonable attorneys' fees; and

J.  Awarding Plaintiff other such relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

The undersigned attorney for Plaintiff hereby certifies that to our knowledge the matter in controversy is not the subject of any other action pending in any court, arbitration or administrative proceeding.

                                              **GOLDBERG SEGALLA LLP**
                                              Attorneys for Plaintiff,
                                              Simonson Technology Services, Inc.

By:      /s/ *David S. Osterman*
           David S. Osterman, Esq.
           Thomas J. O'Grady, Esq.
           GOLDBERG SEGALLA, LLP
           902 Carnegie Center, Suite 100
           Princeton, NJ 08540-6530
           Direct: 609.986.1310
           Fax: 609.986.1301
           Email: dosterman@goldbergsegalla.com

Dated: October 21, 2010